MASON, by guardian *ad litem*, Appellant, vs. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Respondent.

*November 22 — December 11, 1894.*

| 89 | 151 |
| 95 | 516 |
| 89 | 151 |
| 101 | 367 |
| 89 | 151 |
| 102 | 521 |
| 89 | 151 |
| 114 | [1]284 |

*Railroads: Injury to child on track: Negligence: Licensed path: Court and jury.*

1. Plaintiff, a child between three and four years old, was run over by a car upon a switch track in defendant's depot yard.  Upon the evidence — tending to show that at the place where he was run over there had existed for years a beaten path across the tracks and yard of the defendant which was frequently used by grown people and children, and that this path was so well defined and its use so frequent that defendant's servants would naturally know

the fact — it is *held* that it was a question for the jury whether there was a licensed path so that defendant's servants must be held bound to anticipate that a child was likely to be thereon when cars were moved across it, and to keep a lookout upon such cars to prevent injury to such child.

2. Sec. 1811, R. S., which makes it unlawful to walk along the track of a railroad, has no application to a licensed path in and about depot grounds.

APPEAL from a judgment of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Reversed.*

Personal injuries. The defendant's railroad runs in a general easterly and westerly direction through the outskirts of the city of Augusta. The passenger and freight depots are on opposite sides of the track, near the west end of the yard, and from thence the yard extends easterly along the main track for a distance of nearly a quarter of a mile. There are two switch tracks parallel with the main track, and one on each side thereof through the whole yard. There was evidence tending to show that, at a point near the east end of the yard, there was a well-beaten foot-path across the north switch track and the main track, which had been for years frequently and continuously traveled by grown people and children. There were a number of inhabited houses on the north side of the track, and a number on the south side. There was evidence that the inhabitants of these houses used the path in going to and from each other's houses, and that people not living in the immediate vicinity also used it frequently, and that children used it in going to and from school. There was but one street crossing through the body of the yard, and that was about 700 feet west of the path, near the passenger depot.

The plaintiff was at the time of the accident a child three years and nine months of age, and lived with his parents in a house north of the tracks, and about 240 feet from the path crossing. On the day of the accident (June 6, 1892), the father, who was a laboring man, was away from home;

the mother was doing washing for others at home, assisted by her eldest daughter, a girl sixteen years of age. There were four other children at home that day, including the plaintiff,— two older than the plaintiff, and one younger. They were playing about the house, and shortly before the accident they went into the sitting room to play marbles, the oldest child present being a girl twelve years old. The mother and oldest daughter kept on with their work in the kitchen. A door from the sitting room opens outdoors. The mother saw no more of the plaintiff until after the accident. The inference is strong from the evidence that he went outdoors through the sitting-room door, and walked down towards the path across the tracks. He was seen just before the accident by Mrs. Larson just in front of her house, which stood east of the Mason house and nearer the path crossing. Just after she saw him, a freight train came into the yard from the west and switched some cars onto the north switch track. These cars came down towards the east, struck some cars which were standing just west of the path, and pushed one of these cars just across the path. Immediately after this, Mrs. Larson was called by a little boy about four years old to come quick, and she went down to the track and found the plaintiff lying under a freight car, with his arm cut off. She got him out from under the car, and he was taken home. Mrs. Larson testifies that he was lying on the path between the rails of the north switch track and under the easterly car. There was evidence that there was no lookout when the cars were moved, and no signal given.

From a judgment of nonsuit the plaintiff appeals.

For the appellant there was a brief by *T. F. Frawley* and *W. H. Frawley*, and a separate brief and oral argument by *T. F. Frawley*. They argued, among other things, that the travel at the place where the plaintiff was injured was so constant and of such a character that the servants of the

defendant in charge of its trains must have known such fact, and were required to exercise such reasonable care in the movement of its trains and cars over such place as to protect persons thereon from injury. *Philadelphia & R. R. Co. v. Troutman,* 6 Am. & Eng. R. Cas. 117; *Frick v. St. Louis, etc. R. Co.* 8 id. 280; *I. & G. N. R. Co. v. Jordan,* 10 id. 301; *Chicago, M. & St. P. R. Co. v. McArthur,* 53 Fed. Rep. 464; *Chicago & A. R. Co. v. Adler,* 56 Ill. 344; *Ill. Cent. R. Co. v. Benton,* 69 id. 174; *Pittsburg, Ft. W. & C. R. Co. v. Dunn,* 56 Pa. St. 280; *Webb v. P. & K. R. Co.* 57 Me. 117; *Byrne v. N. Y. C. & H. R. R. Co.* 104 N. Y. 362; *Delaney v. M. & St. P. R. Co.* 33 Wis. 67; *Townley v. C., M. & St. P. R. Co.* 53 id. 626; *Whalen v. C. & N. W. R. Co.* 75 id. 654; *Hooker v. C., M. & St. P. R. Co.* 76 id. 542; *Johnson v. L. S. T. & T. Co.* 86 id. 64. The defendant owed a duty of active vigilance in the management of its cars, to the plaintiff; for he was there by its acquiescence, established by the evidence of general use on the part of the public and of certain individuals. *Isabel v. H. & St. J. R. Co.* 60 Mo. 475; *Sutton v. N. Y. C. & H. R. R. Co.* 66 N. Y. 243; *Barry v. N. Y. C. & H. R. R. Co.* 92 id. 289; *Byrne v. N. Y. C. & H. R. R. Co.* 104 id. 362; *Bellefontaine & I. R. Co. v. Snyder,* 18 Ohio St. 400; *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626; *Davis v. C. & N. W. R. Co.* 58 id. 646; *Whalen v. C. & N. W. R. Co.* 75 id. 646. Persons having long been accustomed to use the defendant's track at this place, the company was charged with notice of such usage and owed the duty of keeping a careful lookout at such place, even though the plaintiff was so using its track without authority. 1 Thomp. Neg. 304, 305; *Philadelphia & R. R. Co. v. Troutman,* 6 Am. & Eng. R. Cas. 117; *Taylor v. D. & H. C. Co.* 28 id. 656; *Harriman v. P., C. & St. L. R. Co.* 32 id. 37; *Houston & T. C. R. Co. v. Boozer,* 34 id. 63; *Conley v. C., N. O. & T. P. R. Co.* 41 id. 537; *Thomas v. D., L. & W. R. Co.* 8 Fed. Rep. 729; *Shelby's*

Mason vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

*Adm'r v. C., N. O. & T. P. R. Co.* 85 Ky. 224; *Dunkman v. W., St. L. & P. R. Co.* 95 Mo. 232; *Savannah & M. R. Co. v. Shearer*, 58 Ala. 672; *Needham v. S. F. & S. J. R. Co.* 37 Cal. 409; *Powers v. Harlow*, 53 Mich. 507; *Bellefontaine & I. R. Co. v. Snyder*, 18 Ohio St. 400; *Barry v. N. Y. C. & H. R. R. Co.* 92 N. Y. 289; *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626; *Davis v. C. & N. W. R. Co.* 58 id. 646; *Whalen v. C. & N. W. R. Co.* 75 id. 654.

*H. H. Hayden*, for the respondent, contended, *inter alia*, that no precaution could have prevented this accident except that of a man going ahead of each car before it was bumped as the cars were gathered together in the train and examining the ground at the cars and at the path and removing the child from its position wherever found. The defendant was under no duty to do this unless in the exercise of ordinary care defendant's servants should have reasonably expected that such a helpless infant would be found there. *Central Branch U. P. R. Co. v. Henigh*, 23 Kan. 347; *Hestonville P. R. Co. v. Connell*, 88 Pa. St. 520; *Sutton v. N. Y. C. & H. R. R. Co.* 66 N. Y. 243; *Richards v. C., St. P. & K. C. R. Co.* 81 Iowa, 427; *Philadelphia & R. R. Co. v. Hummell*, 44 Pa. St. 375; *Moore v. Penn. R. Co.* 99 id. 301; *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141; *Hogan v. C., M. & St. P. R. Co.* 59 id. 139. Even if the evidence showed a license for adults and school children to cross the track on the path, it could not, in the absence of other evidence, be held to be a license for unattended infants, *non sui juris* and substantially incapable of helping or looking out for themselves, to travel, play, or loiter on the track. The plaintiff was therefore a mere trespasser. *Richards v. C., St. P. & K. C. R. Co.* 81 Iowa, 427; *Morrissey v. Eastern R. Co.* 126 Mass. 377.

WINSLOW, J. We are of opinion that the nonsuit in this case should not have been ordered. There was evidence

which tended to show that there had existed for years a beaten path across the tracks and yard of the defendant, which was frequently used by grown people and children, and that this track was so well defined and its use so frequent that the defendant's servants would naturally know the fact. It was said by this court in *Anderson v. C., St. P., M. & O. R. Co.* 87 Wis. 195: "It has been frequently held in this and other states that where the grounds of a railway are used by pedestrians for a considerable time without objection, or with acquiescence on the part of the company, a pedestrian crossing over the same becomes thereby a licensee, and is no longer to be considered as a mere trespasser acting at his peril, and that it is the duty of the company to exercise increased prudence and caution in operating its road at such point, and to keep a reasonably vigilant lookout to prevent injury or accident to those so crossing its grounds." Whether, in this case, the evidence showed that there had been such continuous and frequent use of the alleged path in this case by grown people and children, with the consent or acquiescence of the company, that the defendant's employees must be held bound to anticipate that a child was likely to be upon the path when cars were moved across it, and keep a lookout upon such cars to prevent injury to such child, was, we think, a question which should have been submitted to the jury, under proper instructions. We do not say that the evidence established the fact of a licensed path in this case as matter of law, but simply that the proof entitled the plaintiff to a decision of the question by the jury. Certainly, mere desultory, occasional, or fugitive use of a railroad yard by pedestrians at different places cannot impose any duty to exercise more than ordinary care on the employees of the company; the travel must be confined to a certain and well-defined way; it must have been so continuous, frequent, and well established as to raise an inference of acquiescence in such use on the part of the company,

and to impose upon employees the duty of anticipating that the path might or probably would be in use by foot passengers when cars were being moved across it.     There was evidence in this case tending to show that no lookout was kept when the cars were moved across the alleged path; also, that the child was upon the path when injured, although there seems to be some conflict upon this latter proposition. This made the entire question one for the jury.

We were strongly urged to hold that sec. 1811, R. S., which makes it unlawful to walk along the track of a railroad, applies to this case and prevents a recovery, as was held in the case of *Anderson v. C., St. P., M. & O. R. Co.* 87 Wis. 195.     In that case the plaintiff's intestate was killed while walking upon a bridge of the company, which was a part of the main track and was distant from the station or depot grounds.     In that case the former cases holding the principle of increased care as to licensed paths in and about depot grounds were cited, and the distinction clearly drawn between such cases and the case of use of a part of the main track, and the reason for such distinction stated.     We shall not reopen the discussion now.     The statute referred to was in existence prior to the decision of the *Townley Case*, 53 Wis. 626; but that case and those following it in this court have uniformly denied its application to a licensed path in and about the depot grounds.     These cases are cited in the *Anderson Case*, and need not be repeated here.

*By the Court.*— Judgment reversed, and action remanded for a new trial.