ZEMKE, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*September 17—October 5, 1915.*

*Railroads: Killing of pedestrian on track: Licensees: Contributory negligence.*

1. A licensee walking along the track of a railway is bound to exercise ordinary care for his own protection, and contributory negligence on his part will defeat a recovery for injuries caused by negligence of the railway company.

2. Assuming in this case, but not deciding, that a man who, while walking along railway tracks in violation of sec. 1811, Stats., was struck and killed by a switch engine either upon or just after crossing a viaduct, was a licensee and not a mere trespasser, the evidence—showing, among other things, that there were danger signs at both ends of the viaduct and of a nearby railway bridge which deceased had crossed, warning people to keep off the tracks; that there was no room to pass on the bridge or viaduct except in the path of passing trains; that deceased was going north after dark on the track used by north-bound trains; that another switch engine was operating on the south-bound track with the usual noises; that passing trains were frequent and speedy; and that if the deceased had looked to the south before entering upon the viaduct he must have seen the engine in question approaching—is *held* to show, as matter of law, that he was guilty of contributory negligence.

3. The fact that many other persons had traveled along the tracks in the same way was not sufficient to raise an issue on the question of the contributory negligence of the deceased, he having voluntarily and without overmastering necessity exposed himself to great and apparent hazard.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Reversed.*

*Edward M. Smart,* for the appellant.

*William W. Storms,* attorney, and *John B. Simmons,* of counsel, for the respondent.

TIMLIN, J. In this action to recover damages under the death statute it appeared that the deceased, while traveling northward upon and lengthwise of the defendant's tracks in the city of Racine, was killed by a locomotive switch engine of the defendant which was being moved northward on the west or left-hand track from Kenosha to Milwaukee. The defendant operates its double-track road by running its north-bound trains on the west or left-hand track and its south-bound trains on the east or left-hand track. For about half a mile southward from the station at Racine the defendant's double tracks are straight and in this distance cross the Root river on a bridge 250 feet long and forty-five feet above the river. The north end of this bridge is 559 feet south of the

south end of the viaduct crossing Sixth street, and the latter viaduct is fifty-one feet north and south and twenty-seven feet in width. The tracks then cross Mound avenue at grade just north of the Sixth-street viaduct and run from thence to Racine station. There are danger signs maintained by it at both ends of Root-river bridge forbidding trespassing and warning people to keep off the tracks, and at both ends of the Sixth-street viaduct and one near the southerly line of Mound avenue. In order to cross Root-river bridge or the Sixth-street viaduct one must go on the track in such a way that he would come in contact with a passing car should there be one. There is no sidewalk, no room, and no provision made for the use of these bridges by persons traveling on the right of way on foot. Notwithstanding these danger signs and the dangerous condition of the bridge and viaduct and the fact that this road extends between the cities of Milwaukee and Chicago and trains thereon are very frequent and run at high speed, many persons have persisted for years in traveling lengthwise on said track from a point south of the Root-river bridge northerly to the Racine station, so that there are paths parallel with or alongside of the track worn by such persons in those places where the traveler could leave the track and walk alongside of it. By irresistible inference the evidence establishes that the deceased was going home from work along this railroad track after dark and was run over and killed either at the north end of the Sixth-street viaduct or thirty feet farther north. At this time another switch engine was switching cars and passing back and forth upon the east track. The locomotive which ran down the deceased was a switch engine, rather poorly equipped with headlights, but not so as to bring it within the statute which required a certain described headlight, because this engine was not the kind of engine there described.

It is a stern rule of law which requires the defendant under such circumstances to treat the deceased as a licensee

notwithstanding the warning notices and the dangerous nature of the place and to exercise ordinary care for his protection. The defendant under such circumstances is required by many cases to do more than post notices warning persons not to use its tracks for the purpose of traveling lengthwise thereon, although what further it should do or could do is not clearly apparent from the cases. This case will be decided upon the hypothesis that the adult deceased was a licensee and that the defendant owed him a duty to keep a diligent lookout so as to give him timely warning by whistle or bell to get off the track, and further that there is evidence that the occupants of the cab on the switch engine in question, namely, fireman, engineer, and pilot, did not exercise due care in maintaining such lookout or give such signals. While not precisely in point the following cases bear on the subject: *Tunnison v. C., M. & St. P. R. Co.* 150 Wis. 496, 137 N. W. 781; *Ulicke v. C. & N. W. R. Co.* 152 Wis. 236, 139 N. W. 189; *Schug v. C., M. & St. P. R. Co.* 102 Wis. 515, 78 N. W. 1090; *Mason v. C., St. P., M. & O. R. Co.* 89 Wis. 151, 157, 61 N. W. 300; *Anderson v. C., St. P., M. & O. R. Co.* 87 Wis. 195, 207, 58 N. W. 79; *Davis v. C. & N. W. R. Co.* 58 Wis. 646, 17 N. W. 406; *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626, 11 N. W. 55; *Johnson v. C. & N. W. R. Co.* 56 Wis. 274, 14 N. W. 181; *Whalen v. C. & N. W. R. Co.* 75 Wis. 654, 44 N. W. 849; *Great Northern R. Co. v. Thompson,* 199 Fed. 395, 47 L. R. A. N. S. 506; *Fearons v. Kansas City E. R. Co.* 180 Mo. 208, 79 S. W. 394.

Without conclusively deciding that under the circumstances of this case the adult deceased was a licensee instead of a trespasser, the hypothesis above stated will serve for the disposition of the case on another ground. For, assuming that the deceased was a licensee and that the company owed him a duty to exercise ordinary care to the extent that such duty is due licensees, nevertheless the licensee also owes himself the correlative duty to exercise ordinary care for his own

protection.  By sec. 1811, Stats. 1913 (see Wis. Annota-
tions), in force when the deceased met his death, it is made
unlawful for any person other than those connected with or
employed upon the railroad to walk along the track of any
railroad except when such road shall be laid along public
streets.  See, also, sec. 4635, Stats.

Assuming that this alone would not charge the plaintiff
with contributory negligence (cases *supra*), still it goes a
long way in that direction.  Add to this the danger signs
mentioned above.  Add to this the Root-river bridge and
the viaduct over which there was no room to pass except in
the path of a passing train.  Next, the fact that it was after
dark and that the deceased was traveling northward on the
west track and that trains running north, consequently com-
ing up behind him, ran on this track, and that another switch
engine was operating on the east track with the usual noises;
then, that the track in question was between the populous
cities of Chicago and Milwaukee, that passing trains were
numerous, frequent, and speedy.  Add to this the evidence
on the part of the plaintiff that the switch engine in question
was running at the rate of twenty-five miles an hour and
that the deceased was walking.  The engine was moving
then about eight times as fast as the deceased.  Therefore,
when the deceased reached the south end of the Sixth-street
viaduct the engine was approximately 357 feet behind him
and moving toward him.  If it overtook him thirty feet
further north, then when he reached the south end of the via-
duct it was about 559 feet behind him and just leaving Root-
river bridge.  Had he turned and looked back in the direc-
tion of approaching trains he must have seen this engine be-
fore entering upon the viaduct.  Failing to look back under
such circumstances before entering upon this viaduct, par-
ticularly in the presence of the switching engine on the east
track with its noises, was a negligent act.  Looking back and
proceeding with an approaching engine 357 or 559 feet be-

hind him and taking his chances of crossing the viaduct ahead of it was a negligent act. He was run down and killed either just at the north end of this viaduct or thirty feet farther north. If he was thirty feet farther north he had opportunity to step out from between the tracks. But critical and detailed investigation of his acts, while it makes his negligence more apparent, does not seem to be necessary. No man could walk along this track under the circumstances stated without a consciousness that he was exposing himself to danger unless he were wholly absent-minded. This conscious and voluntary exposure to danger or this inexcusable absent-mindedness in the presence of apparent danger is contributory negligence. It is thought in some of the cases that contributory negligence established in this way is rebutted by showing that many other persons traveled along the tracks in the same way. *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626, 11 N. W. 55.

This is not ordinarily the way to rebut a charge of negligence. But, assuming that this proof has such tendency, we think the particular situation and circumstances attending the injury may be such that the example of others taking the like risk may be wholly insufficient to raise an issue on the question of contributory negligence. Where the act is manifestly dangerous and there is no overmastering necessity requiring that such act be done, the fact that others had the hardihood or the carelessness which prompted them to take the same risk cannot be taken to authorize the injured party to voluntarily expose himself to great and apparent hazard and yet recover for the injuries sustained by him in direct consequence of such exposure. It is considered that the question of contributory negligence is so plain in this case and so well established as to require an affirmative finding by the court upon the undisputed evidence on this point.

*By the Court.*—Judgment reversed, and the cause remanded with directions to dismiss the complaint.